1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

ASHTON W. THOMAS,

11
                                Plaintiff,

12
        v.

13
WASHINGTON CORRECTION
CENTER *et al.*,

14
                                Defendants.

15

CASE NO. 3:19-cv-05619-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: September 25, 2020

16      The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

17   Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local

18   Magistrate Judge Rules MJR1, MJR3 and MJR4.  *See* Dkt. 2.  This matter is before the Court on

19   the parties' cross motions for summary judgment.  *See* Dkts. 22, 26.

20      Plaintiff Ashton W. Thomas, who was formerly incarcerated at the Washington

21   Correction Center ("WCC"), alleges that defendants failed to provide adequate medical treatment

22   for his broken foot, and thus, acted with deliberate indifference to his serious medical needs in

23   violation of the Eighth Amendment.  *See* Dkts. 5, 22.  However, after reviewing the parties'

24

1    cross motions and the relevant record, the Court finds that plaintiff did not fully exhaust all

2    available administrative remedies prior to filing this case because he has not shown that he

3    appealed any relevant grievance to the final level of appeal under the Washington State

4    Department of Corrections' ("DOC") grievance policy.  Although plaintiff filed initial or

5    rewritten grievances addressing the allegations against defendants, plaintiff did not appeal any of

6    the determinations rejecting his grievances to Level III, the final level of appeal.  Thus, plaintiff

7    has failed to properly exhaust his administrative remedies before bringing this action in federal

8    court.

9        Therefore, the Court recommends that defendants' cross motion for summary judgment

10   (Dkt. 33) should be granted, plaintiff's motion for summary judgment (Dkt. 22) should be

11   denied, and plaintiff's action should be dismissed without prejudice.

12                          **PROCEDURAL HISTORY**

13       Plaintiff, who proceeds *pro se* and *in forma pauperis*, initiated this action in July 2019.

14   *See* Dkts. 1, 3, 4.  At the time of initiating this action, plaintiff was incarcerated at Coyote Ridge

15   Corrections Center ("CRCC") (*see* Dkt. 5, at 2), but has since been released from custody.  *See*

16   Dkts. 14, 31, at 2.  However, the actions related to this case, arose while plaintiff was

17   incarcerated at WCC from December 2018 to February 2019.  *See* Dkts. 5, 22.

18       In his complaint, plaintiff asserts violations of the Eight Amendment based on the actions

19   of defendants WCC, Joan Palmer (DOC Physician Assistant-Certified), and Kelli Delp (DOC

20   Registered Nurse).  *See* Dkt. 5, at 3–9.  Plaintiff seeks damages in the sum of nine million dollars

21   and "continued health care for the rest of [his] life."  *Id.* at 10.  The parties have engaged in

22   discovery.  *See* Dkt. 23, at 2.

23

24

1    Plaintiff filed his motion for summary judgment in May, 2020.  *See* Dkt. 22.  In support of

2  his motion, plaintiff attached several exhibits.  *See* Dkt. 22-1–22-5.  Upon defendants' motion for

3  continuance under Fed. R. Civ. P. 56(d) (*see* Dkt. 23), the Court re-noted plaintiff's motion for

4  summary judgment (*see* Dkt. 25), and defendants filed their response and cross motion for

5  summary judgment in July 2020.  *See* Dkt. 26.  In support of their motion, defendants filed

6  declarations of defendants Palmer and Delp, as well as declarations of John Radakowski

7  (Medical Director for WCC), Carol Smith (DOC Statewide Grievance Program Manager), and

8  Amy Paden (Assistant Attorney General and defendants' counsel).  *See* Dkts. 27–31.  Defendants

9  served plaintiff with a *Rand* notice and copies of the cross motion for summary judgment and

10  supporting documentation.  *See* Dkt. 32.  Plaintiff has responded, and defendants have replied;

11  the motions are ripe for consideration.  *See* Dkts. 26, 33, 34, 35.

12                                    **FACTUAL BACKGROUND**

13    The Court begins by summarizing the facts of this case from the parties' pleadings,

14  summary judgment briefing, and the evidence submitted in support thereof.  The facts are

15  undisputed except as noted.

16    On December 26, 2018, while housed at WCC, plaintiff injured his left foot while

17  playing volleyball.  *See* Dkt. 5, at 4.  That same day, plaintiff was seen by defendant Palmer, a

18  nurse practitioner, who conducted a physical examination and ordered x-rays.  *See* Dkt. 31-1, at

19  3–4.  While awaiting a doctor's review of plaintiff's x-rays, plaintiff was placed in a wheelchair

20  and on "non-weight bearing status."  *Id.* at 7.  Plaintiff alleges that he remained in "constant pain

21  when [he] was bumped into by other inmates."  Dkt. 5, at 5.

22    On January 3, 2019, a DOC doctor confirmed that plaintiff had a "nondisplaced

23  transverse fracture of the proximal end of the [fifth] metatarsal" and recommended that plaintiff

24

be placed in a "weight-bearing/walking cast" for eight to ten weeks.   Dkt. 31-1, at 7.  On

January 4, 2019, plaintiff met with defendant Palmer, and he was given a walking boot for his

left foot.  *See* Dkts. 5, at 5; 31-1, at 8–10.  Plaintiff alleges that later that same day, "[he] was

unable to walk and . . . was forced to ask[] for emergency medical attention."  Dkt. 5, at 5.

Plaintiff alleges that a corrections officer contacted medical staff about the medical emergency

but later told plaintiff that medical staff would not see him without further explanation.  *See id.* at

7.

On January 6, 2019, after requesting emergency medical attention, plaintiff saw

defendant Delp, a registered nurse, and requested a wheelchair.  *See* Dkts. 5, at 8–9; 31-1, at 14.

Defendant Delp did not give plaintiff a wheelchair, but she offered plaintiff crutches.  *See* Dkts.

5, at 9; 31-1, at 14.  Plaintiff alleges that he remained in "immense pain."  Dkt. 5, at 9.

According to plaintiff, he filed two grievances on January 6, 2019, regarding the medical

care he received while housed at WCC.  *See* Dkt. 33, at 4 (sworn declaration of plaintiff).

However, defendants dispute that plaintiff filed any grievance on January 6, 2019.  *See* Dkts. 26,

at 9; 30, at 6; 35, at 7–8.

On February 21, 2019, plaintiff was transferred from WCC to CRCC.  *See* Dkts. 5, at 2;

22, at 2; 31, at 1.  While housed at CRCC, plaintiff filed four grievances related to medical care

that he received at WCC from December 26, 2018, to January 6, 2019.  *See* Dkts. 22-3, 30-4, 30-

5, 30-6, 30-7.  According to plaintiff, he appealed all of these grievances "to the last level unless

they were resolved at a much earlier level."  Dkt. 33, at 2.  Defendants dispute that plaintiff

exhausted his administrative remedies under the DOC grievance policy.  *See* Dkt. 26, at 13–15.

1

**MOTION TO STRIKE**

2      As a preliminary matter, the Court addresses plaintiff's request to strike all declarations

3  offered by defendants in support of their cross motion for summary judgment.  *See* Dkt. 34, at 3.

4  An affidavit or declaration used to support or oppose a motion for summary judgment "must be

5  made on personal knowledge, set out facts that would be admissible in evidence, and show that

6  the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

7  "A party may object that the material cited to support or dispute a fact cannot be presented in a

8  form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

9      Here, plaintiff moves to strike the supporting declarations of defendants Palmer and Delp

10 (*see* Dkts. 27, 28), as well as the declarations of John Rodakowski (*see* Dkt. 29), Carol Smith

11 (see Dkt. 30), and Amy Paden (*see* Dkt. 31) on the grounds that these declarations "contain[]

12 egregious misrepresentations of the factual record that constitute material[ly] false statements."

13 Dkt. 34, at 3.  However, each of these declarations is sworn, under penalty of perjury, and is

14 based on each witness's personal knowledge regarding this case.  *See* Dkts. 27–31.  Further, the

15 records submitted with these declarations are averred "true and correct copies."  *See id.*  Other

16 than plaintiff's assertion that the declarations contain factual misrepresentations, plaintiff offers

17 no explanation as to how the declarations are factually inaccurate or how the declarations would

18 be inadmissible as evidence.  *See* Dkt. 34, at 3; Fed. R. Civ. P. 56(c).  Unfortunately, it is not

19 unusual that declarations signed under penalty of perjury are often contradictory, and, indeed at

20 least one of the declarations is likely false.  Nonetheless, the declaration must be admitted as

21 evidence and the trier of fact must then determine what is, and what is not, factually accurate.

22 Accordingly, plaintiff's motion to strike defendants' supporting declarations is denied.

23

24

1                    **SUMMARY JUDGMENT STANDARD OF REVIEW**

2          Summary judgment is appropriate if a moving party shows that "there is no genuine

3   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

4   R. Civ. P. 56(a).  The materiality of a given fact is determined by the required elements of the

5   substantive law under which the claims are brought.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

6   242, 248 (1986).  Factual disputes that do not affect the outcome of the suit under the governing

7   law will not be considered.  *Id.*

8          Where there is a complete failure of proof concerning an essential element of the non-

9   moving party's case on which the nonmoving party has the burden of proof, all other facts are

10  rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*

11  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the

12  evidence presented through the prism of the substantive evidentiary burden").  However, when

13  presented with a motion for summary judgment, the court shall review the pleadings and

14  evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation

15  omitted), and "a *pro se* complaint will be liberally construed. . . ."  *Pena v. Gardner,* 976 F.2d

16  469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation

17  omitted).

18         Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

19  the motion must do more than simply show that there is some metaphysical doubt as to the

20  material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The

21  opposing party cannot rest solely on his pleadings but must produce significant, probative

22  evidence in the form of affidavits, and/or admissible discovery material that would allow a

23  reasonable jury to find in his favor.  *Id.* at n. 11; *Anderson*, 477 U.S. at 249–50.  However,

24

1    weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

2    the function of the court.  *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d

3    1539, 1542 (9th Cir. 1989).  And if the moving party has not met its burden on summary

4    judgment, the Court will not grant the motion—even if there is no opposition to the motion.  *See*

5    *Henry v. Gill Inds.*, 983 F.2d 943, 950 (9th Cir. 1993) ("Summary judgment may be resisted and

6    must be denied on no other grounds than that the movant has failed to meet its burden of

7    demonstrating the absence of triable issues.").

8           When parties file cross-motions for summary judgment, as the parties have done here,

9    each motion "must be considered on its own merits."  *Fair Housing Council of Riverside County,*

10   *Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  The Court must review the evidence

11   submitted in support of each cross-motion.  *Id*.  And, although the parties may each assert there

12   are no uncontested issues of material fact, the Court has a responsibility to determine whether

13   disputed issues of material fact are present.  *Id*.; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148

14   (D. Idaho 2010).

15          Because plaintiff is *pro se*, in ruling on the cross motions for summary judgment, the

16   Court will consider all of plaintiff's contentions offered in verified pleadings, where such

17   contentions are based on personal knowledge and set forth facts that would be admissible in

18   evidence, and where plaintiff attested under penalty of perjury that the contents of the verified

19   pleadings are true and correct.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

20                                        **DISCUSSION**

21   **I.      Exhaustion of Administrative Remedies**

22          Defendants argue that plaintiff failed to exhaust his administrative remedies prior to

23   initiating this action.  *See* Dkt. 26, at 13–15.

24

1    Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first

2    exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995

3    ("PLRA"),

4    No action shall be brought with respect to prison conditions under section 1983 of
     this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

5    correctional facility until such administrative remedies as are available are exhausted.

6    42 U.S.C. § 1997e(a).  Exhaustion in cases covered by the PLRA is mandatory.  *Booth v. Churner*,

7    532 U.S. 731, 739 (2001).  The mere fact that a plaintiff has filed an initial grievance under a

8    prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must

9    exhaust *all* levels of an available grievance procedure before he can initiate litigation.  *See id.* at

10   736–41; *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002).  Even when the prisoner seeks relief not

11   available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to

12   suit.  *Booth*, 532 U.S. at 741.  "[A] prisoner must complete the administrative review process in

13   accordance with the applicable procedural rules, including deadlines, as a precondition to bringing

14   suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  If a claim is not exhausted, it

15   must be dismissed.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

16   Failure to exhaust administrative remedies is properly brought as a summary judgment

17   motion.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014).  Once the defendant proves there

18   was an available administrative remedy, and the offender failed to exhaust the available remedy,

19   the burden shifts to the plaintiff.  The plaintiff must show that there was something about his

20   particular claim which made the "existing and generally available administrative remedies

21   effectively unavailable to him."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing

22   *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

23

24

1      ### A.      *Defendants' Evidence*

2          Defendants have provided evidence that, under DOC policy, inmates receive an

3   orientation to the grievance procedure upon their arrival to a DOC facility.  *See* Dkt. 30, at 2.

4   The grievance procedure consists of four levels of review.  *See* Dkts. 30, at 3; 30-1, at 19.  All

5   grievances are initially filed at Level 0.  *See* Dkt. 30, at 3.  At Level 0, the facility's "grievance

6   coordinator pursues informal resolution, returns the complaint to the offender for rewriting,

7   returns the complaint to the offender requesting additional information, or accepts the complaint

8   and processes it as a formal grievance."  *Id.*  From Level 0 through Level II, if an inmate does

9   not a agree with a response to his grievance, he may submit an appeal.  *See* Dkt. 30-1, at 19, 23.

10  A Level III response to a grievance is final and cannot be appealed.  *See id.*

11         Inmates have 20 working days from the date of the incident to file a grievance.  *See* Dkts.

12  30, at 4; 30-1, at 21.  There is an exception to the 20-day filing deadline when an inmate has a

13  valid reason for the delay in filing his grievance.  *See* Dkt. 30, at 4.  A Level 0 grievance that has

14  been returned for rewriting or additional information must be resubmitted within five days or by

15  a date set by a grievance coordinator.  *See* Dkts. 30, at 3; 30-1, at 21.  A Level 0 grievance that is

16  not timely resubmitted is deemed administratively withdrawn.  *See* Dkt. 30, at 3.  A request for a

17  rewrite cannot be appealed; however, once a complaint has been determined to be "not

18  grievable," inmates may file an appeal to the Grievance Program Manager.  *See id.*; Dkt. 30-1, at

19  11, 19.

20         Here, defendants have provided undisputed evidence that plaintiff was aware of the

21  grievance policy and that he filed four grievances while at CRCC related to the medical care that

22  he received at WCC.  *See* Dkt. 30, at 6; 30-4, at 2; 30-5, at 2; 30-6, at 2–3; 30-7, at 2–7.  Plaintiff

23  claims that he filed a grievance on January 6, 2019, claiming that he did not receive proper

24

1    medical treatment. *See* Dkts. 30-4; 33, at 2. Defendants claim that he first filed a claim

2    regarding his medical treatment on April 9, 2019 (Grievance No. 19676533), in which plaintiff

3    requested a follow-up to a WCC medical grievance filed on January 6, 2019. *See* Dkts. 30, at 6;

4    30-4, at 2. The grievance coordinator did not locate plaintiff's January 6, 2019, grievance

5    regarding the alleged failure to provide medical treatment. *See* Dkt. 30-4. The grievance

6    coordinator stated that the only grievance from plaintiff received in January 2019 was regarding

7    the WCC law library (*see* Dkt. 30-3), but she stated that "[i]f you would like, I will allow you to

8    resubmit the grievance late. Rewrite it [and] include what you allege happened [and] when."

9    Dkt. 30-4, at 2. According to defendants, plaintiff did not rewrite and resubmit Grievance No.

10    19676533, and the grievance was considered administratively withdrawn. *See id.*; Dkt. 30, at 3.

11        In fact, plaintiff filed two grievances received on April 23, 2019 (Grievance Nos.

12    19678052 and 19678053). *See* Dkts. 30, at 6–7; 30-5, at 2; 30-6, at 2–3. Plaintiff filed both

13    grievances as "rewrite[s];" however, plaintiff's rewrites were not recognized as rewrites to

14    Grievance No. 19676533. Rather, the grievance coordinator designated both *rewritten*

15    grievances as *new* grievances with two new grievance numbers. Dkts. 30-5, at 2; 30-6, at 3.

16        In Grievance No. 19678052, plaintiff stated that WCC medical staff denied him

17    emergency medical care on "4 (D)/1 (M)/ 19(Y)." Dkt. 30-6, at 3. Apparently mistaking

18    plaintiff's *rewritten* grievance as a *new* grievance based on how plaintiff listed the date of the

19    complaint (*see* Dkt. 30, at 6–7), the grievance coordinator apparently failed to recognize that

20    plaintiff had reversed the month and day, and requested that plaintiff rewrite his grievance by

21    May 13, 2019, stating that plaintiff should "stick to what you allege happened on 4/1/19. [Y]ou

22    cannot grieve clear back to December[] 2018." Dkt. 30-6, at 3. On May 7, 2019, plaintiff filed

23    another rewritten grievance. *See id.* at 2. On May 14, 2019, a WCC grievance coordinator

24

1    denied the rewritten grievance as "not accepted" because it was "well past the 20 business days

2    you have to file a grievance from the date of incident." *Id.* The record indicates that plaintiff did

3    not receive the grievance coordinator's determination and response for over two months. *See*

4    Dkt. 30-7, at 2. However, the record indicates that plaintiff did not appeal this determination

5    once it was received.

6            In Grievance No. 19678053, plaintiff grieved medical care that he received from

7    defendant Delp on January 6, 2019. *See* Dkt. 30-5, at 2. As noted above, plaintiff filed this

8    grievance as a rewrite, but the grievance coordinator assigned a new grievance number and

9    denied the grievance as "not accepted," stating that the grievance was "well beyond the 20

10   business days you have to file a grievance from the date of incident." *Id.* The record indicates

11   that plaintiff did not appeal this determination either.

12           Finally, defendants provided evidence that plaintiff filed a grievance (Grievance No.

13   19683094) received on July 16, 2019. *See* Dkt. 30, at 7; 30-7, at 7. In this grievance, plaintiff

14   complained that he did not receive a response to Grievance No. 19678052 until July 15, 2019,

15   stating that the decision "has been sitting in the grievance office for more than two months thus

16   making it impossible for me to appeal." Dkt. 30-7, at 7. Grievance No. 19683094 was accepted

17   as a Level I grievance. *See id.* On July 29, 2019, after an investigation, a grievance coordinator

18   responded that plaintiff was correct that he did not receive a response to Grievance No.

19   19678052 for 60 days, but "that does not preclude you from appealing that decision." *Id.* at 2.

20   The grievance coordinator "apologize[d] for the error" and further explained that the delay was

21   caused because the WCC grievance office "didn't realize [plaintiff] had submitted a grievance in

22   April [2019] from an incident that happened in January 2019." *Id.* Although the record indicates

23   that DOC grievance coordinators failed to timely respond to Grievance No. 19678052, and failed

24

1   to recognize plaintiff's grievances as rewrites dating back to January 6, 2019, the record does not

2   reflect that plaintiff appealed Grievance No. 19678052, nor does it reflect that plaintiff appealed

3   Grievance No. 19683094.

4        Based on the evidence, several things are clear.  First, the grievance coordinators clearly

5   failed to recognize and act upon plaintiff's grievance regarding his medical care in a timely

6   fashion.  Second, despite these errors, defendants have carried their burden of showing that

7   plaintiff failed to exhaust the available administrative remedies by appealing these grievances to

8   the Level III, as he was required to do.  Despite WCC and CRCC grievance coordinators' errors

9   in failing to recognize plaintiff's grievances as rewrites, dating back to January 6, 2019, the

10  undisputed evidence shows that there was a grievance procedure in place at the time of the

11  alleged incidents complained of in the complaint, that plaintiff was aware of the grievance

12  process and participated in the grievance process while housed at WCC and CRCC, and that

13  plaintiff did not complete the grievance process by appealing his grievances to Level III for the

14  claims alleged in his complaint.

15  **B.    *Plaintiff's Response***

16       The burden now shifts to plaintiff, "who must show that there is something particular in his

17  case that made the existing and generally available remedies effectively unavailable to him by

18  'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or

19  obviously futile.'" *Williams*, 775 F.3d at 119 (quoting *Albino*, 747 F.3d at 1172).  Acts by prison

20  officials preventing the exhaustion of administrative remedies may make administrative remedies

21  effectively unavailable.  *See Nunez v. Duncan*, 591 F.3d 1217, 1224–25 (9th Cir. 2010).  "The

22  ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed

23  in the light most favorable to the plaintiff.  *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at

24

1172). The Supreme Court held there are three circumstances in which an administrative remedy
is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead
> end—with officers unable or consistently unwilling to provide any relief to aggrieved
> inmates. Next, an administrative scheme might be so opaque that it becomes,
> practically speaking, incapable of use—i.e., some mechanism exists to provide relief,
> but no ordinary prisoner can navigate it. And finally, a grievance process is rendered
> unavailable when prison administrators thwart inmates from taking advantage of it
> through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–54 (2016).

In his response to defendants' cross motion for summary judgment, plaintiff argues that the
actions of WCC and CRCC grievance staff made exhaustion unavailable to him. *See* Dkt. 34, at 2.
In support of his argument, plaintiff attaches a copy of an unrelated employee conduct grievance.
*See* Dkt. 34-2, at 1. However, this grievance does not show a genuine issue of material fact
regarding whether or not administrative remedies were available to him related to the medical
treatment he received while housed at WCC.

Further, in support of his argument, plaintiff attaches a copy of Grievance No. 19683094,
in which the grievance coordinator explicitly stated that plaintiff was not precluded from appealing
the determination regarding Grievance No. 19678052. *See* Dkt. 34-2, at 2; *see also supra* Section
I(A). Although the Court recognizes that WCC and CRCC grievance coordinators erred in failing
to timely respond to Grievance No. 19678052, plaintiff does not argue that he was actually
prevented from appealing any grievance determination, nor does he explain how any WCC or
CRCC grievance staff actually or effectively prevented him from exhausting available
administrative remedies under DOC grievance procedures. *See Ross*, 136 S. Ct. at 1853–54;
*Nunez*, 591 F.2d at 1224–25.

REPORT AND RECOMMENDATION - 13

1    In a sworn declaration, plaintiff states that he filed two grievances on January 6, 2019,

2  regarding the medical care he received at WCC. *See* Dkt. 34, at 2. Plaintiff states that this was

3  witnessed by his cellmate. *See id.* Even accepting plaintiff's statements as true, and in the light

4  most favorable to plaintiff, the fact of the initial filing of those two grievances—even if

5  mishandled, misunderstood, or lost by WCC grievance staff—does not show that plaintiff

6  exhausted all available administrative remedies as required by the PLRA. *See Booth*, 532 U.S. at

7  736–41 (The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy

8  does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an

9  available grievance procedure before he can initiate litigation.). Further, even considering WCC

10  and CRCC grievance coordinators' errors in filing and responding to plaintiff's subsequent

11  grievances, the PLRA requires plaintiff to exhaust *all* levels of the DOC grievance procedure, and

12  plaintiff has not shown that he exhausted the DOC grievance procedure by filing a Level III appeal

13  for each rejected grievance. *See* Dkts. 22-3; 30-4; 30-5, 30-6, 30-7. By his own word, plaintiff

14  was aware that he could appeal a dissatisfactory grievance determination, yet he fails to explain

15  why he did not appeal each grievance, including Grievance Nos. 19676533, 19678052, 19678053,

16  or 19683094, to Level III per the DOC grievance policy. *See* Dkt. 33, at 2; *see also* Dkt. 30-1, at

17  11, 19, 23.

18    Plaintiff further attests that he filed an appeal to Grievance No. 19683094, but that he does

19  not have a copy of the appeal or response from the grievance office. *See* Dkt. 33, at 2. Again,

20  even accepting this statement as true, plaintiff has not shown that he exhausted his administrative

21  remedies by filing a Level III appeal as to Grievance No. 19683094, nor does he explain how any

22  WCC or CRCC grievance staff prevented him from doing so. *Ross*, 136 S. Ct. at 1853–54; *Nunez*,

23  591 F.3d at 1224–25.

24

1    Finally, plaintiff attests that he "appealed [his] grievances to the very last level unless they

2    were resolved at a much earlier level." *Id.* Here, plaintiff does not explain how any of his

3    grievances were resolved before reaching Level III, nor does he state that he actually appealed any

4    of the relevant grievances to Level III. Plaintiff appears to rely on grievances that were denied as

5    untimely at Level 0. *See* Dkt. 22-3. However, it is not enough that a prisoner filed an untimely

6    grievance and thereby "exhausts" his available administrative remedies because he missed the

7    deadline and now has no further administrative options—rather, he must properly exhaust his

8    administrative remedies before filing his claims in federal court, including adhering to

9    administrative rules regarding the deadline for filing a grievance. *See Woodford*, 548 U.S. at 88.

10   Failure to fully exhaust each level of available administrative remedies indicates that plaintiff has

11   not properly exhausted those administrative remedies. *Booth*, 532 U.S. at 736–41.

12   In this case, even accepting that WCC and CRCC grievance coordinators erred in handling

13   plaintiff's grievances, plaintiff has not shown, nor raised a genuine dispute of material fact, that he

14   exhausted *all* levels of the DOC grievance procedure by filing a Level III appeal to each relevant

15   grievance. *See Booth*, 532 U.S. at 736–41. Accordingly, plaintiff has not satisfied the

16   requirements of the PLRA by showing that he exhausted all available administrative remedies, or

17   that these administrative remedies were effectively unavailable to him, prior to filing this action.

18   *See Williams*, 775 F.3d at 119.

19   Plaintiff has not overcome defendants' showing that plaintiff failed to exhaust

20   administrative remedies prior to filing suit in this Court. Plaintiff has not demonstrated a genuine

21   dispute as to any material fact, and therefore, the Court concludes that plaintiff failed to properly

22   exhaust the claims alleged in the complaint, and the complaint should be dismissed without

23   prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by*

24

1   *Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted

2   nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

3       Accordingly, the Court recommends that defendants' cross motion for summary judgment

4   (Dkt. 26) should be granted, and plaintiff's motion for summary judgment (Dkt. 22) should be

5   denied.

6       **II.    Eighth Amendment Deliberate Indifference and Qualified Immunity**

7       Because the Court has already determined that, based on the undisputed facts, plaintiff's

8   claims have not been properly exhausted, the Court declines to make a determination as to the

9   parties' remaining arguments.

10      **III.    *In Forma Pauperis* Status on Appeal**

11      The Court recommends revoking plaintiff's *in forma pauperis* ("IFP") status for purposes

12  of appeal.  IFP status on appeal shall not be granted if the district court certifies "before or after the

13  notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A);

14  *see also* 28 U.S.C. § 1915(a)(3).  A plaintiff satisfies the "good faith" requirement if he seeks

15  review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable

16  basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490

17  U.S. 319, 325 (1989).  As discussed above, plaintiff has failed to identify a genuine issue of

18  material fact that he did not exhaust available administrative remedies prior to filing his complaint

19  in federal court.  As such, the Court recommends that plaintiff's *in forma pauperis* status be

20  revoked for purposes of any appeal.

21                          **CONCLUSION**

22      The undersigned recommends that defendants' cross motion for summary judgment (Dkt.

23  26) be granted, that plaintiff's motion for summary judgment (Dkt. 22) be denied, that plaintiff's

24

REPORT AND RECOMMENDATION - 16

1    claims should be dismissed without prejudice, and that plaintiff's *in forma pauperis* status be

2    revoked for any appeal.

3        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

5    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

7    of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

8    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

9    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September**

10    **25, 2020**, as noted in the caption.

11        Dated this 9th day of September, 2020.

12

13

14

15    J. Richard Creatura
      United States Magistrate Judge

16

17

18

19

20

21

22

23

24